# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONICA NASH, et al., *Plaintiffs*, v. COUNTY OF MERCER, et al., *Defendants*. | Civil Action No.: 3:17-cv-03648-PGS-LHG **MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendants' motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment. (ECF Nos. 49, 50). This Court held oral argument on January 7, 2020. For the reasons stated herein, this Court grants, in part, Defendants' motion, and denies Plaintiffs' motion.

Plaintiffs have asserted claims against Defendants under 42 U.S.C. § 1983. Generally, the Complaint alleges (1) lack of probable cause to enter and search Plaintiffs' home on Centre Street in Trenton, New Jersey (Residence); (2) illegal seizure of some of the Plaintiffs (false arrest and false imprisonment); (3) use of excessive force upon the search of the Residence; and (4) *Monell* claims. Defendants' motion primarily asserts that the Sheriff's Officers are shielded by the doctrine of qualified immunity. Plaintiffs' motion for partial summary judgment on Count I alleges an illegal entry into and search of Plaintiffs' home where the officers were not protected by qualified immunity. This memorandum addresses those issues.

1

In addition, Plaintiffs have failed to allege specific facts regarding Defendants Det. Udijohn, Det. Perez, Sgt. Nizolek, and Ofc. Hernandez. Thus, Plaintiffs have no causes of action against the aforementioned officers[1]. Those claims also fail as a matter of law, as explained below.

I.

The plaintiffs are Monica Nash and Hector Nazario, Sr. and their minor sons Te'amo Nazario, Sklyer Nazario, and Hector Nazario, Jr. (collectively "Plaintiffs"). (First Am. Compl. ("FAC"), ECF No. 21). The defendants are the County of Mercer and the aforementioned law enforcement officers, notably Detective Joseph Tuccillo ("Det. Tuccillo"). (*Id.* at ¶¶ 7-20).

On June 1, 2015, Det. Tuccillo was on duty inside the Mercer County Civil Courthouse. (Defs.' Statement of Material Facts ("DSOMF") ¶ 2, ECF No. 49-1). While at the courthouse, Det. Tuccillo was approached by an unidentified man who informed him that "Gary Adams" was selling narcotics at the corner of Furman Street and Centre Street in Trenton, New Jersey. (*Id.*). Based on this tip, Det. Tuccillo investigated and uncovered fifteen outstanding arrest warrants on Gary Adams. (*Id.* at ¶ 3). Plaintiffs allege that the fifteen arrest warrants were issued between 1999 and 2004 for "minor traffic offenses," such as parking tickets. (Pls.' Statement of Material Facts Not in Dispute ("PSOMF") ¶ 11, ECF No. 61). Defendants also claim that Adams's criminal history revealed prior arrests, including resisting arrest, weapons possession, sexual assault, and narcotics possession and/or distribution. (DSOMF ¶ 3).

Det. Tuccillo presumed the warrants were active, but, due to their age, Det. Tuccillo attempted to confirm that the address on the warrants was the same as where Adams presently resided. (DSOMF ¶ 4). Specifically, Det. Tuccillo alleges that he searched various databases for

---

[1] *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018). ("[I]n the face of motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial.").

information about Adams, including the New Jersey Motor Vehicle Commission, Administrative Office of the Courts, and the National Crime Information Center (NCIC). Based on his database research, Det. Tuccillo believed that Gary Adams could be located at the Residence, the same address as provided in the warrants. (*See* Investigative Report 2, Defs.' Ex. A, ECF No. 49-4); (DSOMF ¶ 4).

On the other hand, Plaintiffs counter that Det. Tuccillo's limited database research was insufficient. Plaintiffs claim that had Det. Tuccillo properly conducted a criminal history search of Gary Adams, he would have discovered that Adams's last reported address was 734 Edgewood Avenue, as opposed to the Residence. (PSOMF ¶¶ 22-23). Moreover, Plaintiffs allege that recent state and county government records indicated that Adams's true address was 734 Edgewood Avenue. (PSOMF ¶¶ 25-41).

Believing that Adams's address was located on Centre Street, Det. Tuccillo assembled a team of law enforcement officers ("Team" or "Officers"), including Det. Udijohn, Det. Perez, Sgt. Nizolek, and Ofc. Hernandez, to serve Adams. (DSOMF ¶ 6). A pre-raid briefing regarding the operation was conducted, and then the Team proceeded to the Residence to effectuate the arrest warrants. (*Id.*). Det. Tuccillo was the lead detective of this operation; all officers involved in the raid had no prior knowledge of Gary Adams's whereabouts. (DSOMF ¶¶ 20-24).

The Team arrived at the Residence shortly after 4 p.m. on June 1, 2015. (DSOMF ¶ 7). All Plaintiffs and non-party, Samuel Nash[2], were inside the Residence at the time. (PSOMF ¶ 4). Defendants claim that the main door of the Residence was open, and that the storm door was ajar. (DSOMF ¶ 7). Defendants also allege that Monica Nash verbally permitted the Officers to enter

---

[2] Samuel Nash is Monica Nash's adult son who resided in Plaintiffs' home at the time of this incident. (*See* Pls.' Response to DSOMF, ECF No. 56-1).

3

the Residence. (*Id.* at ¶ 8). Dets. Tuccillo, Perez, and Udijohn approached the front door of the Residence. (*Id.* at ¶¶ 7-9).

The Team entered the Residence with their firearms unholstered and in the "ready position," in order to locate and arrest Adams. (*Id.* at ¶ 9). The Officers claim that they did not point their weapons at any of the Plaintiffs, nor did any of the Officers observe their fellow officers point their weapons at anyone. (*Id.* at ¶ 19A-E). To find Adams, the Officers conducted a protective sweep of the Residence. (*Id.* at ¶ 10). According to the Officers, during this sweep, they observed, in plain view, an AK-47-type rifle protruding from under a couch on the third floor of the Residence. (*Id.*).

Based on the discovery of the rifle, the Officers "secured" the inhabitants of the Residence, because, according to Defendants, the inhabitants had "constructive possession" of the rifle. (*Id.* at ¶ 11). Monica Nash and Hector Nazario, Sr., as well as Samuel Nash, were subsequently handcuffed and transported to the Mercer County Sheriff's Office where they remained for several hours. (*Id.* at ¶ 12). The minor Plaintiffs were placed in the care of a neighbor. (*Id.* at ¶ 13).

After securing the property, the Officers requested and received a search warrant issued by a Superior Court Judge to search the Residence, and Plaintiffs do not contest the validity of this warrant. (*Id.*). Monica Nash apparently consented to this later search of the property as well. During the subsequent search of the Residence, illegal drugs and other weapons were found and later confiscated, for which Samuel Nash took full responsibility. (DSOMF ¶ 14).

Upon completion of the search of the Residence, on the morning of June 2, 2015 (the following day), Plaintiffs were permitted to return to the Residence. (*Id.* at ¶ 15). No charges were filed against Plaintiffs, but Samuel Nash was ultimately convicted and sentenced regarding

4

the illegal drugs and weapons found in the Residence. (*Id.* at ¶¶ 15, 16). As it turned out, Gary Adams was never found and did not live at the Residence. (PSOMF ¶ 52).

None of the Plaintiffs received any medical treatment for any physical injury as a result of the incident, nor are Plaintiffs alleging any permanent physical injuries. (DSOMF ¶ 25; Pls.' Response to DSOMF ¶ 25, ECF No. 56-1). However, Plaintiffs have alleged emotional damages, including pain and suffering and mental anguish. (*See* FAC ¶¶ 52).

Defendants move for summary judgment as to all counts in Plaintiffs' Complaint, asserting that the actions of the Officers on June 1-2, 2015 are protected by way of qualified immunity since their actions were objectively reasonable under the circumstances. Plaintiffs argue to the contrary and have moved for partial summary judgment as to Count One, the entry into and search of the Residence.

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56 when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ullrich v. United States Secy. of Veterans Affairs*, 457 F. App'x 132, 136 (3d Cir. 2012). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995); *see also Ullrich*, 457 F. App'x. at 136 ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record."). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring the nonmoving party to set forth specific facts showing that there is a genuine issue for trial).

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor - that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x 222, 227 (3d Cir. 2007).

III.

Qualified Immunity

The chief issue in this case is whether Det. Tuccillo's actions in entering Plaintiffs' Residence are protected by qualified immunity. Qualified immunity protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Qualified immunity applies unless (1) the facts that a plaintiff has alleged show a violation of a constitutional right and, if so; (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 231-32; *Walker v. Coffey*, 905 F.3d 138, 144 (3d Cir. 2018). A court may address either of these questions first, "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

Moreover, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). Thus, "[a] clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088 (2012)). Furthermore, a right is clearly established when precedent exists that is similar to the case at hand, although the facts of the precedent do not need to be "materially similar." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although qualified immunity is a question of law to be determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995).

IV.

The parties' motions for summary judgment concerning Det. Tuccillo's entry into the Residence are denied because there are genuine disputes of material fact.

Fourth Amendment protections against unreasonable searches and seizures of an individual's home were clearly established at the time of Det. Tuccillo's entry into the Residence on June 1, 2015. The home has traditionally received the utmost protection in Fourth Amendment

7

jurisprudence. *See Payton v. New York*, 445 U.S. 573, 601 (1980); *Ray v. Twp of Warren*, 626 F.3d 170, 175 (3d Cir. 2010). "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S at 603; *see O'Neill v. City of Phila.*, 289 F. App'x 509, 513 (3d Cir. 2008).

To assess the qualified immunity of Det. Tuccillo's entry into the Residence to execute the arrest warrant on Gary Adams, Det. Tuccillo must have had a "reasonable belief" that Adams (1) "reside[d] at the dwelling," and (2) "[was] present at the time of the entry." *United States v. Veal*, 453 F.3d 164, 167 (3d Cir. 2006); *see Pilchesky v. Barone*, 730 F. App'x 126, 128 (3d Cir. 2018); *United States v. Vasquez-Algarin*, 821 F.3d 467, 473 (3d Cir. 2016).

The "reasonable belief" standard is "equivalent to probable cause." *Vasquez-Algarin*, 821 F.3d at 480. In making this determination, the Court must consider the "totality of the circumstances, which . . . encompasses considerations such as the basis and reliability of the information and the receiving officer's ability to corroborate its content." *Vasquez-Algarin*, 821 F.3d at 480 (citing *United States v. Ritter*, 416 F.3d 256, 262-64 (3d Cir. 2005)) (citation omitted). "Once the predicate of residency is established" under the first prong, "that alone carries significant weight in establishing probable cause to believe the arrestee is present, necessarily reducing the quantum of proof needed to meet [the] second prong in the . . . analysis." *Vasquez-Algarin* 821 F.3d at 481. Still, the totality of the circumstances analysis must be conducted on a case-by-case basis. *See Veal* 453 F.3d at 168.

The U.S. Supreme Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present . . . ." *Creighton*, 483 U.S. at 641. The "relevant question," therefore, "is the objective (albeit fact-

specific) question whether a reasonable officer could have believed [his conduct] to be lawful, in light of clearly established law and the information . . . possessed." *Id.* If so, then qualified immunity attaches. *See id.*; *see also Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991).

Here, the Court must determine whether Det. Tuccillo *reasonably* believed that Gary Adams both (1) resided at the Residence, and (2) would be present there on June 1, 2015.

Det. Tuccillo first argues that he reasonably believed that Gary Adams resided at the Residence on June 1, 2015, because there were fifteen "valid and active" arrest warrants for Adams, all of which listed the Residence as Adams's address, and confirmed same through the databases. (*See* Defs.' Summ. J. Br. 6-8, ECF No. 49-2). On the other hand, Plaintiffs argue that Det. Tuccillo lacked probable cause because (1) more recent criminal history-related searches indicated that Adams resided on Edgewood Avenue, and not at the Residence; (2) since the fifteen arrest warrants were over ten years old, a reasonable officer would have concerns about the present veracity of the information in the arrest warrants; and (3) Det. Tuccillo's reliance on an unnamed man who provided the information about Adams is suspect. (PSOMF ¶ 3, 5, 9).

Plaintiffs also describe other actions that Det. Tuccillo should have taken to verify Adams's address, such as surveilling the Residence, checking property records, speaking with neighbors, and researching public utility records and/or phone records to confirm that Adams actually lived there.

Det. Tuccillo counters that all fifteen warrants were "active" and listed the Residence as Adams's address; and that he conducted a driver's license inquiry using the New Jersey Motor Vehicle Commission database, where he learned that Adams had a New Jersey driver's license which listed his address at 310 Centre Street. (Investigative Report 2-3). Det. Tuccillo testified,

> I believe based off Motor Vehicle records, based off the addresses on the warrants, and based off the information I received within an hour or two prior to going to the

house that the individual [Gary Adams] was in that vicinity, that I had enough to go there and attempt to arrest Gary Adams.

(Deposition of Joseph Tuccillo 111:19-25, Oct. 26, 2017, ECF No. 49-4).

Det. Tuccillo also indicated that he used other databases such as PictureLink (a prosecutor's database of mugshots) to generate a picture of Adams, as well as the "AOC Telesystem" and the National Crime Information Center (NCIC) to research Adams's criminal history. (*See id.* at 55:21-22; 58:16-17; 59:10). It is unclear exactly what these additional databases revealed about Gary Adams's address.

Here, based on the totality of the circumstances, there are several genuine factual disputes about whether Det. Tuccillo reasonably believed that Adams lived at the Residence. Therefore, because Det. Tuccillo's qualified immunity depends on disputed factual issues, these issues must be determined by a jury.

The second inquiry is whether Det. Tuccillo reasonably believed that Gary Adams was within the Residence at the time of entry. Like above, this Court finds that there are genuine disputes of fact as to this issue.

Det. Tuccillo testified that he "had reason to believe that [Adams] was in the residence" on the evening of June 1, 2015. (Tuccillo Dep. 112:8-9). He alleges that the Officers knocked on the front door of the Residence and identified themselves as police, and that Monica Nash verbally permitted the Officers to enter. (DSOMF ¶ 8). According to Tuccillo, Monica Nash shouted to the Officers several times that she could not hear them through the front door, and that the Officers, in turn, yelled that they were the police. (Tuccillo Dep. 216:4-10).

Plaintiffs contend, however, that at the time of the incident, Monica Nash was sleeping and thus did not permit the Officers to enter the Residence; and, although the front door was open, the screen door behind it was completely closed. (*See* Pls.' Response to DSOMF ¶¶ 7-8; Deposition

of Monica Nash 11:22-25, Nov. 1, 2018, ECF No. 57-3). Plaintiffs further allege that once the Officers were inside the Residence to locate and arrest Adams, none of the Officers announced that they had an arrest warrant for Adams, nor did any of the Officers ask the Plaintiffs about the whereabouts of Adams, let alone mention the name "Gary Adams." (Pls.' Response to DSOMF at ¶¶ 9-10; Pls.' Opp'n Br. 8). Monica Nash testified that she repeatedly asked the Officers why they were in the house and that she informed the Officers that they were in the wrong house, but to no avail. (*See* Nash Dep. 25:4-8; 27:4-8).

These conflicting accounts of the facts further demonstrate that there are genuine, material disputes as to whether Det. Tuccillo reasonably believed that Adams would be inside the house when the Officers entered. Accordingly, summary judgment must be denied as to Count One.

V.

In Count Two, which is asserted against all the Officers, Monica Nash and Hector Nazario, Sr. claim that, under the Fourth Amendment, they were falsely arrested and imprisoned because they were handcuffed, arrested, and detained in police custody without probable cause. Conversely, Defendants argue that Monica Nash and Hector Nazario, Sr. were lawfully detained because they had constructive possession[3] of the AK-47-type rifle that was found inside their home, and that during their detention, the Officers obtained a valid search warrant from a Mercer County Superior Court Judge to search the house for illegal contraband.

To state a claim for false arrest, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *City of Wilkes-Barre*, 700 F.3d at 680; *see Groman v. Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995). In this case, although Monica Nash and

---

[3] Defendants do not define the term "constructive possession."

11

Hector Nazario, Sr. have not indicated which officer(s) arrested them, it is clear that they were arrested when they were "placed in handcuffs at the scene." *Catalano v. City of Trenton*, Civil Action No. 18-11646 (FLW) (DEA), 2019 U.S. Dist. LEXIS 91350, at *13-14 (D.N.J. May 31, 2019) (citation and internal quotation marks omitted). Therefore, the inquiry centers on whether the Officers had probable cause to effectuate the arrests.

Probable cause exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "[A] defendant officer violates an individual's Fourth Amendment right to be free from false arrest if it was not objectively reasonable for the officer to believe that probable cause existed at the time of the arrest." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 230 (D.N.J. 2015). The Third Circuit has explained that courts must apply a "common sense approach," and that a determination as to probable cause must be based on "the totality of the circumstances." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000).

Although "the question of probable cause in a section 1983 damage suit is one for the jury," a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to [the plaintiffs], reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000). Furthermore, "an arrest based on probable cause could not become the source of a claim for false imprisonment." *Groman*, 47 F.3d at 636 (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979)).

Moreover, a warrant founded on probable cause to search for contraband "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is

conducted." *Michigan v. Summers*, 452 U.S. 692, 705 (1981). The justifications for such detention are to prevent flight if incriminating evidence is found and to minimize the risk of harm to law enforcement officers. *Id.* at 702.

In this case, the Court finds that Plaintiffs were not falsely arrested or imprisoned, because after the Officers found the AK-47-type rifle in the Residence, the Officers obtained a valid search warrant from the Superior Court Judge, and Plaintiffs do not contest the validity of the warrant. The warrant was based on probable cause and carried with it the "implicit authority" to detain Plaintiffs while the Officers investigated the nature and ownership of the weapon and other contraband. Monica Nash and Hector Nazario, Sr. were released when the protective sweep of the Residence concluded. Therefore, because probable cause existed, Plaintiffs' false arrest and false imprisonment claims fail as a matter of law and are dismissed with prejudice.

## VI.

In Count Two, Plaintiffs also allege that the Officers' pointing their guns at Plaintiffs during the raid of their home constituted excessive force in violation of the Fourth Amendment, § 1983, the New Jersey Constitution, and the New Jersey Civil Rights Act (NJCRA). (FAC ¶ 55).

Courts in this district have consistently interpreted the NJCRA and § 1983 analogously. *See Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012). In addition, New Jersey courts apply the federal standard when addressing excessive force claims brought under the state constitution. *See Perez v. City of Camden*, No. 12-7687 (RBK/KMW), 2014 U.S. Dist. LEXIS 132500, at *19 (D.N.J. Sept. 22, 2014); *State v. Ravotto*, 169 N.J. 227, 235-36 (2001).

To prevail on a Fourth Amendment excessive force claim, a plaintiff must demonstrate that a seizure occurred and that it was unreasonable under the circumstances. *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011); *see Graham v. Connnor*, 490 U.S. 386, 397 (1989). Here,

13

there is no dispute that Plaintiffs were seized when the Officers raided the Residence and allegedly pointed their weapons at Plaintiffs. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("Whenever an officer restrains the freedom of a person to walk away, he has seized that person.").

To determine whether the use of force was "reasonable," courts must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 386. Courts should also assess the duration of the action, whether the physical force applied could have led to injury, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir.), *cert denied*, 125 S. Ct. 453 (2004). Courts must note that "police officers are often forced to make split-second judgments" in uncertain and rapidly evolving circumstances. *Graham*, 490 U.S. at 396-97.

In *Mellott v. Heemer*, a case where the plaintiffs alleged that law enforcement officers used excessive force against them by pointing their loaded guns at their heads, chests, and backs, the Third Circuit held that the officers' use of force was objectively reasonable due to, among other things, "the uncertainty of the situation confronting the [officers]" and "the lack of any physical injury to the plaintiffs." 161 F.3d 117, 123 (3d Cir. 1998).

In this case, Plaintiffs' excessive force claim fails because Plaintiffs do not specify which officer(s) pointed his or her gun at them, *see* FAC ¶ 55; Pls.' Opp'n Br. 27. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018). Even if Plaintiffs could identify which officer pointed his or her gun at them, under the circumstances, the Officers' actions were objectively reasonable. Here, Det. Tuccillo's research revealed that Gary Adams's criminal history included resisting arrest, weapons possession, sexual assault, and narcotics possession and/or distribution.

14

Although there are disputed facts about whether Adams could be found inside the Residence, Adams's criminal history suggests that the Officers could have reasonably been uncertain about what or whom they would encounter in the Residence when they attempted to arrest Adams. *See Mellott*, 161 F.3d at 123. Also, like *Mellott*, the Officers' use of force in this case was reasonable because Plaintiffs have not alleged any physical injuries as a result of the Officers allegedly pointing their weapons at them. *See id.* Accordingly, Plaintiffs' excessive force claim is dismissed with prejudice.

## VII.

Plaintiffs allege in Count Three that Defendants Mercer County and Mercer County Sheriff John Kemler, "[a]cting under color of law and pursuant to official policy, practice, or custom . . . failed to instruct, train, supervise, control and discipline the Individual Defendant Officers[.]" (FAC ¶¶ 63, 64). Plaintiffs allege same in Count Four, but "under the doctrine of respondeat superior." (*Id.* at ¶¶ 75, 76) (emphasis in original).

Plaintiffs' respondeat superior claim against Mercer County in Count Four fails as a matter of law, because "a municipality cannot be held liable under § 1983 under a theory of respondeat superior." *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *Wright v. City of Phila.*, 685 F. App'x 142, 146 (3d Cir. 2017).

To state a claim for failure to train, a plaintiff must demonstrate the "municipality's failure to train its employees in a relevant respect amount[s] to [a] 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563

15

U.S. 51, 61 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A plaintiff may successfully plead a defendant's "deliberate indifference" by identifying specific training deficiencies and either (1) a pattern of constitutional violations of which policy-making officials can be charged with knowledge, or (2) that training is obviously necessary to avoid constitutional violations. *See City of Canton,* 489 U.S. at 396-97.

However, a plaintiff must also demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Moreover, "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. Ordinarily, this requires "[a] pattern of similar constitutional violations by untrained employees," *Connick*, 563 U.S. at 62; but sometimes, a single constitutional violation may amount to deliberate indifference. *See Canton*, 489 U.S. at 390.

In this case, Plaintiffs argue that the *lack* of any policy or training at the Mercer County Sheriff's Office concerning fugitive operations and procedures "played a direct and causative role" behind Det. Tuccillo's unawareness of the need for probable cause to enter Plaintiffs' home to arrest Gary Adams. (Pls.' Opp'n Br. 35). Specifically, Plaintiffs point to "Fugitive Unit Policy V4.C27," which, apparently, was a policy that took effect at the Mercer County Sheriff's Office in February 2016, before the events in question. (Pls.' Opp'n Br. 35). In this respect, Plaintiffs' law enforcement expert concluded the following:

10. Since department policy and the attended training are the foundations for officer performance, the failure of the MCSO [Mercer County Sheriff's Office] to have a written Fugitive Unit policy prior to June 1, 2015, indicates the officers were not trained in the performance of Fugitive Unit operations and procedures.

11. The MCSO's actions/inactions, as discussed in this report, were contrary to accepted law enforcement practices and procedures, and reflect a deliberate indifference and disregard for the safety and well-being officers, officers' families, and citizens generally[.]

(McCauley Report 27). Contrarily, Defendants' expert stated that he could not locate

> any policy statement, resolution, ordinance, and/or decision officially adopted and promulgated by the County of Mercer, Sheriff John Kemler or any other Mercer County Policy . . . and/or well-settled custom or practices by Defendants that led to the harm of any of the plaintiffs within this case . . . there is no basis for any claim regarding failure to supervise or failure to train.

(Chapman Report).

Here, the diverging conclusions of the parties' experts concerning the Mercer County Sheriff's Office's fugitive arrest policies demonstrate that there are genuine disputes of fact about whether Mercer County and Sheriff Kemler adequately trained its law enforcement officers about such policies. Thus, Plaintiffs' failure to train claim in Count Three must be resolved by a jury.

The *Monell* claim can only be brought against one defendant. Accordingly, Mercer County or Sheriff Kemler should be dismissed. As such, the Court dismisses Sheriff John Kemler.

VIII.

Lastly, Defendants allege that Plaintiffs' liability expert's testimony is an inadmissible net opinion. It is not appropriate for the Court to rule on the sufficiency and reliability of expert opinions at this stage. Defendants are free to raise such issues in a motion in limine and at trial.

Defendants also argue that under § 1983 and the NJCRA, Plaintiffs cannot recover punitive damages against the municipal Defendants. Plaintiffs concede, in part, but argue that they seek an award of punitive damages against Det. Tuccillo in his individual capacity only.

17

Punitive damages are not available against municipalities under § 1983 or the NJCRA. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Caban v. City of Newark*, Civil Action No. 17-8230, 2018 U.S. Dist. LEXIS 89533, at *7 (D.N.J. May 29, 2018). Still, a jury may assess punitive damages against a defendant acting in his individual capacity "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see DeLuzio v. Monroe County*, 271 F. App'x 193, 198 (3d Cir. 2008).

## ORDER

This matter, having come before the Court on Defendants' Motion for Summary Judgment (ECF No. 49), and Plaintiffs' Motion for Partial Summary Judgment (ECF No. 50), and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 8th day of April, 2020,

**ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 49) is **GRANTED IN PART** and **DENIED IN PART** as follows: Counts II and IV in Plaintiffs' Complaint are dismissed with prejudice. Counts I and III will proceed to trial. All claims against the following Defendant Officers are dismissed with prejudice:

- Detective James Udijohn;
- Detective William Perez;
- Sergeant James Nizolek;
- Officer Ricardo Hernandez; and
- Sheriff John Kemler.

It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (ECF No. 50) is **DENIED**.

                                        s/*Peter G. Sheridan*
                                        PETER G. SHERIDAN, U.S.D.J.